

# United States District Court

SOUTHERN DISTRICT OF CALIFORNIA

FILED
2008 JUL 30 PM 2: 26

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____

**08 MJ 2341**

### In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

Express Mail EH291591521US addressed to Sonda Gonzales, #000 #110 2720 Plaza Blvd. Ste o National City , CA 91950.

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

### CASE NUMBER:

I, _____ P. G. Garn _____ being duly sworn depose and say:

I am a(n) _____ US Postal Inspector _____ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)
The above described Mail article, which is in the custody of the U.S. Postal Service

in the Southern _____ District of California _____

there is now concealed a certain person or property, namely (describe the person or property)
Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid or negotiable instruments for controlled substances, in violation of Title 21 United States Code, Section(s) 841(a)(1), 843(b) and 846 which is evidence and contraband.

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
Property that constitutes evidence of the commission of a criminal offense, contraband, the fruits of a crime, things Otherwise criminally possessed and property designed and intended for use and which is and has been used the Means for committing a criminal offense.

in violation of Title 21 _____ United States Code, Section(s) 841(a)(1), 843(b) and 846 _____ .
The facts to support the issuance of a Search Warrant are as follows:
See attached affidavit of Postal Inspector P.G. Garn

Continued on the attached sheets and made a part hereof.    ☒ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

Date 7/30/08

at    SAN DIEGO, CALIFORNIA
City and State

_____
Name and Title of Judicial Officer
**JAN M. ADLER**
**U.S. MAGISTRATE JUDGE**

_____
Signature of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT

I, P. G. Garn, being duly sworn hereby depose and state:

1.      I am a United States Postal Inspector assigned to the San Diego Field Office of the Postal Inspection Service and am detailed to the San Diego Integrated Narcotic Task Force (NTF) as a Task Force Officer. My duties include investigating violations of the Drug Abuse Prevention and Control Act.

2.      This affidavit is submitted in support of an application for a search warrant for the following parcels:

> Express Mail EH291591521US addressed to Sonda Gonzales, #000 #110 2720 Plaza Blvd. Ste o National City , CA 91950 with a return address of Pablo Cesar G, 5749 S Spaulding, Chicago, IL 60629.

> Express Mail EH099159342US addressed to Janet Mesa Rosete, 641 E. San Isidro Blvd. # B3-44, San Isidro, California 92173 with a return address of Pablo Cesar G., 210 Waverly 1-C, Carpentersville, IL 60110.

3.      I have been employed as a Postal Inspector for over 17 years, and have been employed by the Postal Service for over 22 years. I am currently assigned to the San Diego Narcotic Task Force as a Task Force Officer. In 1990 and 1995, I received formal training from the Postal Inspection Service regarding individuals using the U.S. Mail to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances transactions. I have also received formal training from the California Highway Patrol (1994) and United States Postal Inspection Service (1992) regarding the illicit use of controlled substances and the objective

1

symptomatology of individuals who are under the influence of controlled substances. In 1994, I received formal training from the Drug Enforcement Administration (DEA) regarding narcotic investigations including street, mid-level, and major trafficking organizations; presumptive field testing, drug recognition, objective symptomatology of drug use, and investigative techniques. In 2002, I received formal drug interdiction training sponsored by the Drug Enforcement Administration conducted in San Diego, CA regarding drug interdiction investigations as well as national and international drug trafficking trends. In June and July 2003, I received formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. In August 2003, I received formal training from the DEA. In May 2005, I received additional formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. In August 2007, I received formal training from the Department of Justice OCDEFT and Asset Forfeiture programs on international and national drug trafficking trends. Since, 1994, I have been a member of the California Narcotics Officer Association and have received formal and informal training from this organization as well as read articles written by members regarding drug trafficking and narcotics investigations. Since 1994, I have been a member of the Western States Information Network and have received briefings on drug trafficking trends and investigations by agents, officers, prosecutors and analysts as well as conducted training for other officers, agents, prosecutors and analysts involved in narcotics investigations. I have also conducted training for Postal Inspectors regarding the use of the Postal service to facilitate drug trafficking and money laundering as well as officials with the Australian Federal Police and state and local agencies in the State of California.

2

4.      Since 1991, I have been involved in hundreds of investigations involving the shipment of controlled substances including marijuana, methamphetamine, cocaine, heroin, opium and pharmaceuticals as well as drug proceeds through the U.S. Mail and other commercial shipping companies such as Federal Express and United Parcel Service (UPS). I have also investigated individuals who have used Postal Money Orders to launder the proceeds from controlled substance transactions. These investigations have resulted in the seizure considerable amounts of illicit drugs, drug related assets and drug related evidence as well as numerous arrests of individuals for violations of federal and state controlled substances laws.

5.      Based upon my training, experience and discussions with other agents, I know the following in summary:

(a)     Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

(b)     The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

(c)     Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

(d)   It is also known that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

(e)   Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1.   Items sent via "Express Mail" or "Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2.   "Express Mail" is usually requested to be delivered by the next day's mail.

3.   "Priority Mail" is usually requested to be delivered within two days of mailing.

4.   Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

5.   Any delay to the mail is an indication to the mailer the mailed item(s) have been possibly compromised by law enforcement agencies to obtain a search warrant.

6.   While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in

deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

6. The information contained in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers and Postal employees. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7. On July 30, 2008, other Postal Inspectors and I were conducting a routine interdiction of inbound Express Mail at the Midway Processing and Distribution Facility in San Diego, CA. We identified Express Mail EH291591521US addressed to Sonda Gonzales, #000 #110 2720 Plaza Blvd. Ste o National City , CA 91950 with a return address of Pablo Cesar G, 5749 S Spaulding, Chicago, IL 60629 and Express Mail EH099159342US addressed to Janet Mesa Rosete, 641 E. San Isidro Blvd. # B3-44, San Isidro, California 92173 with a return address of Pablo Cesar G., 210 Waverly 1-C, Carpentersville, IL 60110 as suspicious parcels for reasons which included:

1. The size shape and appearance of the parcels appeared to be similar to parcels containing drug proceeds in previous investigations.

2. The hand printed address information on both parcels appeared to me to be written by the same individual.

3. While one parcel listed Pablo Cesar G's return address as 5749 S Spaulding, Chicago, IL 60629 the other listed a return address of 210 Waverly 1-C, Carpentersville, IL 60110.

4. "Pablo Cesar G's" name did not appear to be complete.

5. San Ysidro was mispelled "San Isidro" on the addressee address.

8.    On July 30, 2008, San Diego Police Detective Conrad DeCastro and his trained drug detection dog, "Blaze", conducted an individual exterior inspection of the subject parcels. Detective DeCastro told me that Blaze alerted to the presence of the odor of controlled substances coming from each parcel.

9.    I have been advised of the qualifications of the dog handler, Detective DeCastro and his narcotic detection dog as described in Attachment A, which is filed in conjunction herewith and incorporated by reference herein.

10.    In addition, Detective Steve A. Sloan, Dog Trainer for the San Diego Police Department Canine Training Section, certifying official for the California Narcotic Canine Association and a court recognized narcotic detection canine expert, told me the following in summary:

A. Because of the absorption of the odor of controlled substances, and the narcotics detection canine's inherently keen sense of smell, the narcotic detection canine will continue to alert on the container or item depending on the length of exposure to the controlled substances, the specific controlled substance and the ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been Detective Sloan's experience that a properly trained narcotic detection canine will not alert to all currency. Detective Sloan said the most relevant factor regarding alerts on currency is the threshold amount of narcotic odors that is set in the training of the narcotics detection canine. Detective Sloan's experience is that canine training must include the establishment of a lower threshold of approximately one gram of a controlled substance or more to ensure the canine is alerting to

more than the average contamination.   Average contamination is reported to occur through normal handling.   The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These substances have included food, plastic bags and wrap, tape controlled substance adulterants. Circulated and non-circulated U.S. currency.  Proofing is a method used in training to ensure the canine alerts only to odors for which it is trained to alert.

B. Detective DeCastro told me that he agrees with the above statement and he includes proofing as part of his canine training.

11.    On July 30, 2008, I went to 2700 Plaza Blvd. in National City to conduct further investigation and I learned the following in summary:

This is a Commercial Mail Receiving Agency (CMRA) which rents private mail boxes. The subject who rented box 110 is Sayda Yamilette Gonzalez de la Torre. Gonzales used Mexican identification documents to rent the private mail box but did not list a home address on the PS Form 1583 Application for Delivery of Mail Through Agent. Gonzalez provided a telephone number of 619-571-5191. I subsequently called this number and asked Gonzalez to call me. I have not received a call from Gonzalez. Note: both Gonzalez' first and last names are misspelled on the subject parcel.

12.    On July 30, 2008, I went to 641 East San Ysidro Blvd to conduct further investigation and I learned the following in summary:

This is a Commercial Mail Receiving Agency (CMRA) which rents private mail boxes. The subject who rented Box 44 is Janeth Meza Rosette. Rosette also used Mexican identification documents and listed an address in Mexico on

7

her Application for Delivery of Mail Through Agent. Note: Rosete's first name

and middle name are misspelled on the subject parcel.

13.   I know from previous investigations that criminals who use the mail to ship drug

proceeds will sometimes use multiple addresses to ship proceeds in an attempt to

make sure a portion of the proceeds sent will reach the intended destination as well

as set up private mail boxes to shield their operations and identites from law

enforcement.

14.   Based on the facts set forth in this affidavit, I submit that there is probable cause to

believe controlled substances, notes and/or currency from the illegal sale and mailing

of controlled substances are being concealed in the Express Mail articles as

described and seek the issuance of a search warrant directing the search of the

articles as described above and the seizure of the article, any controlled substances,

currency, and/or materials and documents reflecting the distribution of controlled

substances, all in violation of Title 21, United States Code, Sections 841(a)(1),

843(b), and 846.

P. G. Garn

Postal Inspector

Sworn to before me, and subscribed in my presence, on this 30th day of July , 2008.

U. S. Magistrate Judge

8

**ATTACHMENT A**

Conrad V. DeCastro, ID #3954 is currently a Detective for the San Diego Police Department (SDPD) assigned to the San Diego Police Department's Narcotics Section since January of 2000. Detective DeCastro has been a police officer for over twenty-two (22) years and has worked as a narcotic detection dog handler since August 2003.   Detective DeCastro is a member of both the California Narcotics Officers Association (CNOA) and the California Narcotics Canine Association (CNCA).

SDPD Detective DeCastro has participated in over 1,000 arrests of persons for violations of controlled substance laws.  Detective DeCastro has in excess of 480 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, cocaine and heroin; including an 80-hour POST Certified narcotic investigators course.   Detective DeCastro has posed as a user of narcotics in the past, and has successfully purchased controlled substances in an undercover capacity.   Detective DeCastro has been recognized as a narcotics expert by the San Diego Municipal and Superior Courts of the County of San Diego and has testified as such on numerous occasions.   Detective DeCastro is familiar with the manner in which said substances are packaged, marketed and consumed.   Detective DeCastro has received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor.

In September 2007, "Blaze," ID# C-1088 was assigned to SDPD Detective DeCastro.  Blaze has received training in the detection of marijuana, methamphetamine, cocaine and heroin under the direction of SDPD Detective and San Diego Integrated Task Force Federal Officer Steve A. Sloan. Detective Sloan is President, trainer and certifying official for the California Narcotic Canine Association (CNCA).

On May 14, 2008; after one hundred (100) hours of training in the detection of marijuana, methamphetamine, cocaine and heroin, "Blaze" was certified as 100% proficient in the detection of

same by California Narcotic Canine Association (CNCA) certifying official, SDPD Detective Steve Sloan.

Blaze's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. Over five (5) search warrants have been obtained on Blaze's alerts subsequent to his certification. Blaze alerts on many occasions where the controlled substances are seized because a warrant is not required, has already been obtained or consent is obtained.

SDPD Detective DeCastro and Blaze have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container.

The common belief is all currency in circulation is contaminated with narcotics. A properly trained narcotic detection canine will not alert to all currency. It has been SDPD Detective DeCastro's experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been Detective DeCastro's experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.